**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MICHAEL FITZGERALD WEBB,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 17-2038-JWL** |
| **NANCY A. BERRYHILL,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.  Background**

---

[1] On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB, alleging disability beginning September 1, 2012. (R. 13, 202). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the Administrative Law Judge (ALJ) failed to assess residual functional capacity (RFC) on a functional basis, erred in weighing the third-party opinion of his wife and the credibility of his allegations of symptoms resulting from his impairments, and failed to sustain the Commissioner's burden at step five of the sequential evaluation process because the ALJ accepted vocational expert (VE) testimony in conflict with the Dictionary of Occupational Titles (DOT).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers Plaintiff's arguments in the order presented in his Brief and finds no error in the Commissioner's final decision.

## II.  Function-By-Function RFC Assessment

Plaintiff's first claim is that the ALJ erred because he first "expressed the RFC in terms of exertional levels of work" rather than first performing "the requisite function-by-function assessment" required by Social Security Ruling (SSR) 96-8p. (Pl. Br. 11). He claims the "ALJ failed to perform the function-by-function assessment and address the

specific work-related abilities of pushing and pulling," and "failed to discuss Plaintiff's ability to perform sustained work activities on a regular and containing basis." (Pl. Br. 12). The Commissioner argues that the ALJ did assess Plaintiff's abilities and limitations on a function-by-function basis and assessed limitations consistent with the medical opinion of Dr. Kaur, a state agency physician, and with the other medical evidence of record. (Comm'r Br. 6-7).

### A. Standard for Assessing RFC

The Commissioner has promulgated regulations regarding assessment of RFC. 20 C.F.R. §§ 404.1545-1546. In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s). Id. at § 404.1545. The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all of the claimant's impairments, including impairments which are not "severe" as defined in the regulations. Id. at § 404.1545(a & e). The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments. Id. § 404.1545(b,c,d); see also §§ 404.1521, 416.921 (listing examples of basic work activities which may be affected by impairments). At the hearing level, it is the ALJ's responsibility to assess RFC. Id. § 404.1546(c).

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2017).  The ruling explains that assessment of RFC involves a function-by-function consideration of each work-related ability <u>before</u> expressing the RFC in terms of the exertional categories of "sedentary," "light," and so forth.  <u>Id.</u> at 143, 145-46.  Failure to perform a function-by-function assessment may result in an improper finding at step four regarding plaintiff's ability to perform his past relevant work as he actually performed it.  <u>Id.</u>  Moreover, because certain occupations do not require the capacity to meet all the strength demands of the full range of work in a particular exertional category, a failure to do a function-by-function assessment may result in improper findings at step four regarding plaintiff's ability to perform his past relevant work as it is generally performed in the national economy or at step five regarding plaintiff's ability to perform other work in the national economy.  <u>Id.</u> at 145-46 (also see examples 1-3, p. 146).

**B.** **Analysis**

Plaintiff's argument regarding function-by-function assessment is not entirely clear.  If he is alleging error merely because the ALJ stated his RFC assessment first in finding number 6--before he explained his function-by function assessment in pages 6 through 15 of his decision--Plaintiff is elevating form over substance.  The fact that SSR 96-8p requires an ALJ to perform a function-by-function consideration of a claimant's

work-related abilities before expressing RFC in terms of an exertional category, does not mean that the decision cannot express an RFC finding before it explains the ALJ's consideration and the process whereby he arrived at the RFC assessment.  Here, that is precisely what he did.  (R. 18-27).

On the other hand, Plaintiff may be heard to argue that the ALJ erred because nowhere in his decision did he state explicitly that he had considered Plaintiff's capacity for pushing and pulling which was limited to a particular amount.  Plaintiff is correct that the ALJ did not specifically mention Plaintiff's capacity for pushing and pulling.  However, he noted Plaintiff's allegations he could only lift maybe 10 to 15 pounds, and specifically found that Plaintiff's "testimony regarding his alleged limitations in lifting . . . are not credible."  (R. 26).  He specifically noted that Dr. Rhee provided a temporary lifting restriction to 10 pounds for three months after Plaintiff's spine surgery, but accorded that opinion little weight currently because the three months period had expired. Id.  And he specifically found that Plaintiff is able to "occasionally lift 20 pounds and frequently lift 10 pounds."  (R. 28).  While this is not a discussion of pushing and pulling capacity explicitly, it is an exertional capacity, and pushing and pulling limits are usually found to be the same as lifting and carrying limitations.  See, e.g., R. 80 (Dr. Kaur's opinion explaining that Plaintiff's ability to operate hand and foot controls is no more limited than his ability to lift and carry).  Moreover, and perhaps most importantly, Plaintiff does not argue that his ability to push or pull is more limited than his ability to lift or carry, and the court's review of the record finds no evidence suggesting it is.  And,

in this case none of the record medical evidence conflicts with the ALJ's conclusion that claimant can perform light work. When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.

Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004).

### III.    Evaluation of Plaintiff's Wife's Statement

Plaintiff next claims that the ALJ's evaluation of Plaintiff's wife's statement is flawed and unsupported. (Pl. Br. 13). He argues that the ALJ's reasons for according only little weight to Ms. Webb's statement are "contrary to the three regulations and four rulings requiring the ALJ to consider [such] evidence as substantial evidence shedding additional light on Plaintiff's conditions which cannot be gleaned from objective medical records." Id. at 13-14. The Commissioner argues that the ALJ considered Ms. Webb's statement and provided his reasons for discounting the statement which are supported by the record evidence, and while he is required to consider such third-party statements, he is not required to accept them as true. (Comm'r Br. 8-10).

As Plaintiff's Brief suggests, the Social Security Administration has provided a Social Security Ruling to clarify how it considers third party statements regarding a claimant's abilities, capacities, and limitations. SSR 06-3p, West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2017). In that ruling, it explains how an ALJ should evaluate the opinion of a spouse:

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether

8

>    the evidence is consistent with other evidence, and any other factors that
>    tend to support or refute the evidence.

Id., West's Soc. Sec. Reporting Serv., Rulings 333 (Supp. 2017).

That is what the ALJ did in this case. He noted that Ms. Webb is Plaintiff's wife, and that her opinion "mirrors some of the claimant's testimony," but that it also shows that Plaintiff can do more than he reports he can do. (R. 27). He then noted, as the ruling suggests, that Ms. Webb is "not a medical source and did not observe the claimant in a professional capacity." He explained that such an opinion has little value in deciding whether the limitations alleged result from medical impairments. In context, he gave Ms. Webb's statement little weight because it was cumulative of Plaintiff's allegations, which he found were not credible, and because it did not show that the limitations alleged were the result of medical impairments. Plaintiff may disagree with the ALJ's finding, but the ALJ applied the correct legal standard, considered the statement, and explained his reasons for discounting the statement. Those reasons are supported by the record evidence, and more is not required. Moreover, the rule in the Tenth Circuit has long been that an ALJ need not make specific, written findings regarding a third party's statement so long as the decision reflects that the ALJ considered that statement. Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996).

**IV.    Credibility Determination**

Plaintiff claims the ALJ's credibility determination is unsupported. He argues that the ALJ's determination focused on Plaintiff's character for truthfulness rather than his

9

symptoms. (Pl. Br. 14). He argues that the ALJ relied on Plaintiff's activities of daily living to discount his allegations of disabling symptoms, but that the performance of such activities as relied upon by the ALJ do not demonstrate an ability to work, nor establish that Plaintiff is able to engage in substantial gainful activity. Id. at 14-15 (citing R. 26).

The Commissioner's response points out that "Plaintiff's only real complaint appears to be that the ALJ's findings about Plaintiff's activities of daily living 'does not establish that [he] is capable of engaging in substantial gainful activity.'" (Comm'r Br. 10) (quoting Pl. Br. 15) (brackets in Comm'r Br.). The Commissioner cites to certain of the ALJ's findings of inconsistencies between Plaintiff's allegations of disabling symptoms and the record evidence as bases for the ALJ's credibility finding and argues that the record evidence supports his determination that Plaintiff's allegations are not credible. Id. at 11. She argues that the consistency between Plaintiff's allegations of symptoms and his activities of daily living is a valid consideration in the Tenth Circuit to consider in a credibility determination. Id. at 12 (citing Bainbridge v. Colvin, 618 F. App'x 384, 388 (10th Cir. 2015)).

The court's review of an ALJ's credibility determination is deferential. It is generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations,

the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); see also Hackett, 395 F.3d at 1173 (same).

Here, the ALJ noted several inconsistencies in the evidence supporting his finding that Plaintiff's allegations of disabling symptoms are not credible.  The discogram on September 24, 2013 showed only discordant pain which Dr. Clough noted was not a correlating result.  (R. 23, 26).  After the cervical spine surgery Dr. Rhee noted and Plaintiff reported a good result.  (R. 25, 26).  Although Plaintiff reported that he needed a cane for pain management, Dr. Roberts noted that it was not required for stability.  (R. 24).  Finally, the ALJ noted that Plaintiff "testified that his back pain 'limits his abilities to do anything at all,' yet the evidence shows that he can still perform a wide variety of activities of daily living."  (R. 26) (apparently quoting Plaintiff's hearing testimony at R. 43 ("my back pain limits my life and it limits me in my abilities to deal with anything at all")).  Moreover, the ALJ also found that Plaintiff's wife's statement demonstrates that he does more activities of daily living than he reported.  (R. 27).  This case presents the same situation as presented in Bainbridge, cited by the Commissioner.

> The ALJ did not rely on [Plaintiff's] ADLs to establish that he could work or as the sole basis for finding him not fully credible. Instead, the ALJ used them as one part of h[is] adverse credibility finding, as the Commissioner's regulations require and our case law recognizes. The ALJ was entitled to base h[is] adverse credibility finding, in part, on [Plaintiff's] performance of these activities.

Bainbridge, 618 F. App'x at 388 (citations omitted). Giving the credibility determination due deference, there is no error

## V.     Step Five

In his final allegation of error Plaintiff claims the ALJ's step five determination is erroneous because the ALJ accepted vocational expert (VE) testimony which conflicts with the Dictionary of Occupational Titles (DOT). Plaintiff points out that each of the representative jobs relied upon by the ALJ, in finding that Plaintiff is able to perform a significant number of jobs in the economy, requires frequent reaching and frequent handling. (Pl. Br. 16). He acknowledges that the ALJ found that Plaintiff "is limited to no overhead reaching and handling," and appears to accept that frequent reaching and frequent handling does not require overhead reaching or overhead handling, but argues that it is unclear if the ALJ meant no overhead reaching and no overhead handling, or no overhead reaching and no handling of any sort, overhead or otherwise. Id. He argues that because the exact meaning of this limitation is unclear the court cannot know whether substantial evidence supports the RFC determination or whether the VE testimony was consistent with the DOT. The Commissioner argues that Plaintiff's argument strains credulity and that a "plain language" interpretation of the ALJ's assessment is that the

"overhead" in the phrase "no overhead reaching and handling" relates to both reaching and handling, and the court "should resist Plaintiff's invitation to find conflict or ambiguity where none exists." (Comm'r Br. 14).

The court finds no error. A common-sense understanding of the ALJ's finding supports applying the adjective "overhead" in the single phrase to both of the following gerunds, "reaching," and "handling." This argument is strengthened by the fact that "[r]eaching . . . and handling. . . are activities required in <u>almost all jobs</u>." SSR 85-15 1985 WL 56857, at *7 (1985) (emphasis added). If handling were precluded, this would have been an exceedingly great limitation not supported by the record in this case. Further support is found in the ALJ's statement of Plaintiff's RFC, both in the decision at issue and in the hypothetical question presented to the VE. The ALJ provided only one limitation modifier in each phrase containing work-related activities. "[O]ccasionally lift 20 pounds," <u>frequently</u> lift 10 pounds," "walk or stand for <u>6 of 8 hours</u>," "sit for <u>6 of 8 hours</u>," "<u>occasionally</u> climb stairs," "<u>never</u> climb ropes, scaffolds or ladders," "<u>occasionally</u> balance, stoop, crouch, kneel and crawl," "no <u>overhead</u> reaching or handling," "avoid <u>prolonged</u> exposure to cold temperature extremes, chemicals, dust, fumes, noxious odors, and vibrating machinery." (R. 18) (RFC assessment in the decision) (bolding omitted) (emphases added). "[O]ccasionally lift 20 pounds, <u>frequently</u> 10," "[w]alk or stand <u>six of eight hours</u> and sit for <u>six of eight hours</u>," "<u>occasionally</u> climb stairs, but <u>never</u> climb ropes, scaffolds or ladders, [o]ccasionally balance, stoop, crouch, kneel and crawl," "no <u>overhead</u> reaching and handling," "avoid <u>prolonged</u> exposure to

13

cold temperature extremes, chemicals, dust, fumes and noxious odors and vibrating machinery." (R. 50-51) (hypothetical question at the hearing) (emphases added).

Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 7th day of February 2018, at Kansas City, Kansas.

s:/   John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
